**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **VANASIA HARRIS,** | ) | |
| | ) | |
| ***Plaintiff,*** | ) | **CAFN:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF SOUTH FULTON,** | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **TERRENCE HARRIS** | ) | |
| **In his individual capacity** | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **KRISTA ROWLAND** | ) | |
| **In her individual capacity** | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **TANISHA REYNOLDS** | ) | |
| **In her individual capacity** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ***Defendants.*** | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Vanasia Harris ("Corporeal/Ms. Harris"), files this Complaint against the Defendants, using, inter alia, Section 1983 as a vehicle to vindicate her rights under the U.S. Constitution to be free from sex discrimination pursuant the

Equal Protection Clause of the Fourteenth Amendment and pursuant to Georgia's Whistle Blower Act.

## INTRODUCTION

"Come sit on this dick." Defendant Terrence Harris (Srgt. Harris) said that and so much more to Plaintiff, yet, never got investigated and thus still works at South Fulton Police Department. Plaintiff, Corporeal Harris, reported all of Srgt. Harris's conduct, to include showing her female direct supervisor, Defendant Lieutenant Rowland, all text messages and photos sent by Srgt. Harris of his penis to Plaintiff. But, Lt. Rowland excused Srgt. Harris's conduct as Srgt. Harris just being Srgt. Harris. In fact, Lt. Rowland refused to remove Plaintiff from the same shift rotation as Srgt. Harris, ensuring that Plaintiff would be subjected to all of Srgt. Walker's grotesque advances.

Moreover, it did not matter how many times Plaintiff flatly rejected—with expletive language—Srgt. Walker's gross advances, a predator will be a predator: Srgt. Walker continued to the point of offering approximately $1,500 dollars to Plaintiff for sex. As crazy as that sounds, what's crazier is the fact that, after Plaintiff's repeated inquiries to Lt. Rowland with respect to whether action was going to be taken against Srgt. Harris, Lt. Rowland decided to open a bogus investigation against Plaintiff, an investigation that resulted in Plaintiff being terminated.

That the City of South Fulton and all Defendants have promoted, condoned, ratified, and shielded a virulent sexual predator such as Srgt. Harris, while trying to ruin the life of Plaintiff, is shameful. And all City officials (elected or otherwise) should be held accountable.

**JURISDICTION AND VENUE**

1.

Jurisdiction and venue are proper in this case.

2.

Jurisdiction is proper under 28 U.S.C. § 1331 and 1343(a)(4). Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.1 because (1) a substantial part of the events and omissions giving rise to the claims in this case occurred in this District and Division and (2) Defendant is located and transacts business in this District and Division.

**PARTIES**

3.

**Plaintiff** Vanasia Harris is a citizen of the United States. She is a resident of Rockdale County.

4.

Defendant City of South Fulton is a municipal corporation located in Fulton County and has been duly created and incorporated pursuant to the laws of Georgia,

and as such may be sued in its capacity as a municipality in accordance with applicable laws. Defendant may be served by serving its Mayor.

5.

Defendant Terrence Harris at all times relevant was a sergeant at SFPD and is sued in his individual capacity. Terrence Harris grossly sexually harassed the Plaintiff and suffered zero disciplinary consequences for his actions.

6.

Defendant Krista Rowland, at all times relevant was a female lieutenant at SFPD and is sued in her individual capacity. Lt. Rowland was Plaintiff's direct supervisor and knew that Srgt. Harris was sexually harassing Plaintiff, yet, chose to do nothing about it: Rowland refused to report the subject harassment, including Srgt. Harris's sexually explicit text messages to IA, while covering up the situation.

7.

Defendant Tanisha Reynolds at all times relevant was a female lieutenant at SFPD and head of the internal affairs division, and is sued in her individual capacity. Reynolds upon information and belief went to academy training with Defendant Rowland. Upon information and belief, eventually, Rowland disclosed the conduct of Srgt. Walker to Defendant Reynolds, yet, Reynold did not instigate an investigation of Srgt. Harris or otherwise investigate the situation. Fed. R. Civ.

P(b)(3). Nevertheless, Plaintiff during her IA investigation asked Reynolds whether they were going to investigate her complaint against Srgt. Harris and Reynolds did absolutely nothing to even inquire about the complaint after Plaintiff brought it to her attention. So even if Reynolds claims she knew nothing about the complaint against Srgt. Harris prior to that moment, Reynolds still did nothing to inquire about the issue after Plaintiff brought the sexual harassment situation to her attention.

## STATEMENT OF FACTS

### A. About Vanasia Harris

8.

Corporeal. Harris was born in Miami, FL but moved to Georgia when she was about fifteen years' old and finished high school in Georgia.

9.

After graduating high school Corporeal Harris managed a McDonalds and then worked for a security company for about two years.

10.

At the age of nineteen, Corporeal Harris became a jailer, correctional officer at Clayton County Jail.

11.

Claytin County Sheriff's Office sent Corporeal Harris to mandate academy in March 2022, and she graduated in June of 2022.

12.

After mandate, Corporeal Harris stayed at the jail and then left, going to Griffin Police Department but soon left and began working for Newton County Sheriff's Office for two years. At Newton, Corporeal Harris worked in the H.E.A.T Program (Highway Enforcement Aggressive Traffic). Then, South Fulton Police Department (SFPD) recruited her to work in its H.E.A.T. Program.

13.

Ms. Harris joined South Fulton Police Department (SFPD) in February 24, 2025.

**B. SFPD**

14.

Corporeal Harris began her career at SFPD as a corporeal, and reported directly to Defendant Lt. Krista Rowland in the H.E.A.T program (Highway Enforcement Aggressive Traffic).

15.

Corporeal Harris successfully completed her Field Training Program in March 2025. At this point, Ms. Harris met Srgt. Terrence Harris.

16.

There is no familial relationship between Defendant Srgt. Harris and Plaintiff, Corporeal Harris.

**C. Sexual Harassment begins**

17.

Sgt. Harris upon first meeting Ms. Harris said “you new here, damn you fine. Are you married.” This occurred in March 2025.

18.

The very next encounter was through text, still in March 2025, Sgt. Harris sent a text message saying “come sit on this dick.” Then, “this is sergeant Harris you remember me from the other night.”

19.

Ms. Harris responded by saying “Ok? Lose my number!” and leave me tf alone!”

20.

Next, Srgt. Harris followed Corporeal Harris to City Grove Road on South Fulton Parkway and asked her why she had not responded to his message and then said “what if I pay for it.” Notably, while he was saying what if I pay for it, Srgt. Harris had a handful of money, including one

hundred dollar bills, and said "how much you want" and then told Corporeal Harris he had one thousand five hundred dollars. Corporeal Harris drove away and threatened to report him to IA. This happened in late March.

21.

Relative to offering Corporeal Harris money, almost immediately thereafter, on April 1, 2025, Srgt. Harris told Corporeal Harris in a text message "you didn't want to take my money." Corporeal Harris responded by saying "TF nigga I don't give asf how much u send me u will happily get keep getting your money back." Then Srgt. Harris said "Meet me at cedar grove! I got something." And Corporeal Harris rejected him yet again by saying, "Nah bro man leave me tf alone." And then in shocking, delusional fashion, Srgt. Harris said "you act like I'm bothering you. Yo. We not cool no more?" After this, Corporeal Harris permanently blocked Srgt. Harris.

22.

Corporeal Harris reported this entire issue to her direct report Defendant Lt. Krista Rowland, at City Grove Road Precinct, and showed Lt. Rowland the text messages. Lt. Rowland responded by saying "I know Harris and that is Harris being Harris" and that she would look into it. After the conversation, on that same day, Corporeal Harris asked Lt. Rowland if she could switch her duty rotation so that she did not have to be on the same

rotation with Srgt. Harris. Lt. Rowland told her "no" and thus Corporeal Harris had to stay on the same duty rotation after showing Lt. Rowland the sexually explicit text messages and photo of Srgt. Harris's penis.

23.

Even after Corporeal Harris reported Srgt. Harris's sexually explicit overtures to her direct report Lt. Rowland, Srgt. Harris continued to follow Corporeal Harris around the city—notably Srgt. Harris always knew Corporeal Harris's location because her car had a mandated GPS tracker of which Srgt. Harris had access.

24.

Srgt. Harris continued to call Corporeal Harris saying things like "talk dirty to me, where you at, caress me" and telling her that he, Srgt. Harris "want to have a baby with her and that her [Corporeal Harris's] kids could be his [Srgt. Harris's] kids—mindful that Srgt. Harris knew that Corporeal Harris had two young children. This goes on for the entire month of March and April 2025.

25.

After Corporeal Harris yet again reported Srgt. Harris's sexually explicit advances to Lt. Rowland in the beginning of April, and while Srgt. Harris continued to stalk and harass Corporeal Harris—Corporeal Harris repeatedly asked

Lt. Rowland had she done anything about this issue regarding Srgt. Harris sexually explicit overtures and conduct. Lt. Rowland kept saying, she would let Corporeal Harris know when she, Lt. Rowland, knows something.

**D. Retaliation begins**

26.

The first week of May 2025, Lt Rowland—who never reported a thing to IA, never told Corporeal Harris to do a memorandum about Srgt. Harris as required by governing policies and procedures in a situation like this—met with Corporeal Harris to discuss alleged body cam violations. This was the very first time that anyone discussed alleged body cam violations with Corporeal Harris, and this meeting came right after Corporeal Harris continued to follow up and request action from Lt. Rowland about the sexual harassment of Srgt. Harris.

27.

In that meeting, Lt. Rowland claimed that Corporeal Harris was making false statements about her field sobriety contacts. Lt. Rowland claimed that she did not see Corporeal Harris do field sobriety contacts on the body cam.

28.

For each of the four circumstances discussed by Lt. Rowland, Corporeal Harris debunked all allegations made by Lt. Rowland. Lt. Rowland, after the

explanations, which clearly debunked any allegation of wrong doing, gave Corporeal Harris a verbal warning.

**E. More retaliation: IA investigation and termination**

29.

Almost immediately after the meeting with Lt. Rowland, who issued a verbal warning only to Corporeal Harris—Srgt. Harris told Corporeal Harris to resign because she would be put under investigation soon.

30.

Afte the verbal warning, Corporeal Harris went to a three week training for law enforcement phlebotomist. After she passed her phlebotomy exam, Corporeal Harris was informed by Lt. Rowland that she was under investigation by internal affairs, which at the time was headed by Defendant Reynolds.

31.

Related to her being under investigation by IA—zero investigation was started regarding her report—with text message evidence of an extraordinary explicit nature—of Srgt. Harris. No investigation had been started or done.

32.

Significantly, it was Lt. Rowland—the command staff that refused to investigate Srgt. Harris—who informed Corporeal Harris she was under investigation by IA.

33.

Within three weeks of IA initiating an investigation of Corporeal Harris, Chief Meadows of SFPD terminated her. Significantly, prior to be terminating, Corporeal Harris **passed three polygraph exams**, yet, SFPD still terminated her.

34.

Chief Turner terminated Corporeal Harris's employment, and while doing so, Corporeal Harris heard Meadows tell multiple officers that "she [Corporeal Harris] will never be able to police again."

**F. Some of the damages**

35.

Ms. Harris has applied to seven jobs, all of which have denied her employment.

36.

The Chief of Jonesboro Police Department told Corporeal Harris that when he inquired about her, that he, the Chief of Jonesboro PD, was told that Corporeal Harris was a **promiscuous woman** who was a liability. Corporeal Harris did not get the job.

37.

Corporeal Harris tried to go back to Clayton County Sheriff's Office, where she left on good terms, but was told by the Sheriff that she would have to wait it out. Corporeal Harris did not get re-hired.

38.

Corporeal Harris's property manager of the apartment complex in which she lived told her that at least one SFPD officer told management, while wearing an SFPD uniform, that Corporeal Harris was not supposed to be "there" and when Corporeal Harris asked the property manager to clarify the term "there," the property manager said "sounds like they are talking about being in the city." Then, the property manager terminated Ms. Harris's lease because as she told Corporeal Harris, she, the property manager, did not want to be sued.

39.

SFPD officers interfered with Ms. Harris child custody by releasing information in her employment file to the father of her child knowing full well he would use it in her custody dispute. Notably, the father had simply gone to SFPD to get a police report, but when SFPD officers noticed that he was the father of Corporeal Harris's—these officers provided him absolutely confidential information without him even requesting said information.

**COUNT I**
**SECTION 1983- EQUAL PROTECTION CLAIM**
**(against Defendant Harris)**

40.

Plaintiff fully incorporates the facts and assertions found in paragraphs **1-39**, as if fully stated herein to support all allegations made in this Count.

41.

Based on the facts and assertions incorporated to support this Count, Defendant Terrence Harris violated Corporeal Harris's right to be free form sexual harassment by sexually harassing her, in a gross, continuous, extreme, severe and pervasive manner.

42.

Because of Defendant's discrimination, based on sexual harassment, in violation of Corporeal Harris's protected rights under the Equal Protection Clause of the Fourteenth Amendment— Corporeal Harris is entitled to all permissible damages under law.

**COUNT II**
**SECTION 1983- EQUAL PROTECTION CLAIM; SUPERVISORY LIABILITY AND RETALIATION**
**(against Defendants Rowland and Reynolds)**

43.

Plaintiff fully incorporates the facts and assertions found in paragraphs **1-39**, as if fully stated herein to support all allegations made in this Count.

44.

Based on the facts and assertions incorporated to support this Count, Defendant Rowland condoned, ratified, and personally facilitated the sexual harassment of Corporeal Harris by refusing to report the sexual harassment complaint made by Corporeal Harris to Lt. Rowland, a complaint that was accompanied by grossly explicit text messages and photo, which justified and warranted immediately termination of Defendant Terrence Harris. Rowland's condoned, ratified and facilitated Srgt. Harris gross sexual harassment because, inter alia, she took zero steps to stop said conduct by, for example, reporting Srgt. Harris up the chain of command and also to internal affairs—as required by government policies and procedures. Lt. Rowland not only refused to report Srgt. Harris's unlawful conduct—despite repeated inquiries and complaints by Corporeal Harris about Srgt. Harris's sexual harassment—Lt. Rowland then retaliated against Corporeal Harris.

Moreover, based on the facts to support this Count, Defendant Reynolds knew of Srgt. Harris's sexual harassment of Plaintiff and chose to protect, condone and ratify said conduct by (1) refusing to investigate Srgt. Harris and (2) using her position as the head of internal affairs to investigate and recommend for termination Plaintiff, a recommendation that was rubber stamped by Chief Meadows—despite Corporeal Harris passing three polygraph exams. In fact, after causing Plaintiff to be terminated, Defendant Reynolds was asked by Plaintiff whether any action would be taken against Srgt. Harris, and Reynolds responded by telling Corporeal Harris don't worry about that because you are no longer employed here. Of course, as of today, no action has been taken against Srgt. Harris.

45.

Because of Defendant's unlawful conduct of retaliating against Corporeal Harris — Corporeal Harris is entitled to all permissible damages under law.

**COUNT III**
**SECTION 1983- EQUAL PROTECTION CLAIM**
**(against the City of South Fulton)**

46.

Plaintiff fully incorporates the facts and assertions found in paragraphs **1-39** as if fully stated herein to support all allegations made in this Count.

47.

Based on the facts and assertions incorporated to support this Count, and the fact that (1) Corporeal Harris was warned during the Field Training by other officers that Srgt. Harris talked to women sexually and does not take no for an answer; (2) that Lt. Rowland and the Defendant Reynolds (head of IA at the time) absolutely refused to investigate Srgt. Harris; (3) Chief Meadows knew about the explicit text messages and photo and Corporeal Harris's Complaint prior to terminating her, yet, took zero action against Srgt. Harris —the City had a custom, pattern, and practice of permitting Srgt. Harris (and most likely other male officers) to sexually harass SFPD woman officers, including Corporeal Harris, at the work place. See Fed. R. Civ. P. 11(b)(3).

## COUNT IV
## VIOLATION OF THE GEORGIA WHISTLEBLOWER ACT
## (O.C.G.A. § 45-1-4)
## (Against City of South Fulton)

48.

Plaintiff incorporates paragraphs 1-39, and any other paragraph this Court deems relevant, as if fully set forth herein.

49.

At all relevant times, Plaintiff Corporeal Harris was a public employee within the meaning of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4, and Defendant City of South Fulton was her public employer.

50.

Based on the facts incorporated in support of this Count, Plaintiff made protected disclosures concerning reasonably perceived violations of law, rules, and regulations, including, but not limited to: reporting gross sexual harassment by Srgt. Harris to her supervisor Lt. Rowland—who was to report the issue to internal affairs and up her chain of command per governing policies and procedures yet, refused to do so. Also, although Defendant Reynolds became aware of the sexual harassment through Plaintiff, Reynolds intentionally failed to take steps to investigate the issue as required by policy.

51.

Following these disclosures, Plaintiff experienced retaliation in the form of an IA investigation and termination of her employment—despite passing three polygraph exams ordered by Defendants.

52.

As a result of Defendants' unlawful conduct, Plaintiff has suffered significant harm, including reputational damage, emotional distress, loss of career

advancement, and diminished professional credibility within the law enforcement community. Consequently, Corporeal Harris is entitled to all permissible damages under governing law.

**COUNT V**
**PUNITIVE DAMAGES**
**(against all Defendants except the City of South Fulton)**

53.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-52, as if fully stated herein to support all allegations made in this Count.

54.

Based on the facts incorporated to support this Count, Defendants' conduct was, and still is, willful and wanton as well as demonstrating an entire want of care that raises the presumption of a conscious indifference to consequences. Consequently, Plaintiff is entitled to punitive damages and a Judgment against Defendants of no less than four million dollars. Under governing law, there should be no cap on punitive damages because relevant Defendants acted intentionally to cause the very harm that occurred.

**COUNT VI**
**ATTORNEY FEES**

55.

Plaintiff now fully incorporates the facts and assertions found in paragraphs **1-52**, as if fully stated herein to support all allegations made in this Count.

56.

Based on the facts to support this Count, Plaintiff is entitled to attorney fees, under 42 U.S.C. § 1988, *inter alia*.

**PRAYER FOR RELIEF**

WHEREFORE, Plaint respectfully prays and requests a trial by jury and judgment of this Honorable Court against Defendants as follows:

(a) That process issue and service be had on each Defendant;

(b) That judgment be granted in favor of the Plaintiff against the Defendants, on all matters this Court deems are matters of pure law, jointly and severally, for the injuries of Plaintiff. And that all other matters be resolved by a jury;

(c) That Plaintiff recover all damages permissible by law, to include compensatory damages, liquidated damages, punitive damages, and **special damages**, including any back pay, future lost income, damages for her

reduction in earning capacity and other expenses in an amount not less than four million dollars;

(d) Plaintiff recovers all costs of litigation, including reasonable attorney fees;

(e) That a jury trial be had on all issues so triable; and

(f) That this Court enters and awards such other and further relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court so determines to be just and proper.

Respectfully Submitted: **October 7, 2025**,

**/s/ MARIO WILLIAMS**
Mario Williams
Ga. Bar No. 235254

**HUMANITY DIGNITY AND RIGHTS LLC**
Life Time Work - Buckhead - at Phipps Plaza
3480 Peachtree Road, NE, Second (2nd) Floor
Atlanta, Georgia 30326
Tel.: 470-257-2485
Email: mwilliams@hdrattorneys.com
***Counsel for Vanasia Harris***